## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODERICK IRISH<br>13101 Welty Road, #5<br>Waynesboro, PA 17268 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | DOCKET NO.: |
| v. | : <br> : | |
| OSL RETAIL SERVICES CORP.<br>923 Haddonfield Road<br>Cherry Hill, NJ 08002 | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Roderick Irish (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Plaintiff against OSL Retail Services Corp. (*hereinafter* referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that he was unlawfully terminated from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under Title VII. Plaintiff's PHRA claims however will mirror identically his federal claims under Title VII.

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the FMLA, the ADA, and Title VII.  Diversity jurisdiction also exists as the parties are residents of two different states and the amount in controversy exceeds $75,000.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant manages over 1,700 Walmart Wireless locations across North America and is the exclusive wireless sales and service provider for Walmart in Canada.

9. Defendant is internationally headquartered at 5090 Orbitor Drive, Mississauga, ON L4W 5B5, and its United States headquarters is at the above-captioned address.

10. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a black, African-American male.

13. Plaintiff was hired by Defendant on or about July 15, 2025, and in total was employed for slightly in excess of eight (8) months until he was terminated on or about March 26, 2026.

14. Plaintiff was deemed to work remotely from his residence in Waynesboro, PA, with travel and oversight over district-assigned locations throughout Pennsylvania.

15. As a District Manager of Region 6 – District 604, Plaintiff's territory was a large swath of Pennsylvania overseeing many PA-based locations.

16. Throughout his employment, Plaintiff's primary manager was Paul Heffley ("Heffley"), a Regional Sales Director. Heffley's manager was Spenser Manning ("Manning"), a Vice President.

17.    Throughout his tenure with Defendant, Plaintiff was a dedicated and hard-working employee who performed his job well.

18.    Unfortunately, however, shortly after his hire, Plaintiff witnessed Heffley (a Caucasian male) being racially discriminatory on a consistent basis throughout his employment.

19.    By way of examples,

a.    Heffley told a black employee if he didn't work at Defendant, he would be at Wendy's, as if he could only be a low-level laborer;

b.    Heffley mocked employees with Indian accents in an offensive manner at times;

c.    Heffley posted or commented on offensive GIFS in chat threads, such as using black people in images; and

d.    Heffley encouraged images and texting in a chat thread wherein one of his District Managers (Joseph McGuire) was superimposed on an image of Stalin and referred to by Caucasian management as "Joseph McStalin," the "Supreme Leader." Stalin was known as being antisemitic, and the chat threat prompted a complaint from a Jewish person on the chat messages.

20.    The aforesaid are simply examples of some of the comments and actions by Heffley, as Heffley made numerous comments that were either racially insensitive or outwardly racially or ethnically offensive.

21.    Heffley created, cultivated, and perpetuated a racist and discriminatory work environment as a whole as well, including through the actions of his team. For instance:

a.    Heffley or his team (of Caucasian management) would be openly offensive, such as referring to black people as "boy" or "boys" and making other inappropriate comments; and

b.    Heffley was supporting his management disciplining a Muslim employee for purported timecard fraud when he took less than 10 minutes to pray as a religious accommodation.

22.    Heffley and his Caucasian district managers were causing numerous HR and discrimination complaints to be lodged, some formal and some informal.

4

23.    The culture was <u>blatantly</u> discriminatory – but what is more concerning – Defendant failed to remedy anyone's environment or to properly discipline (or terminate) Heffley.

24.    It was not just the commentary and overt dialogue, but also the <u>extensive</u> disparate treatment that contributed to the overall hostile work environment for minorities including Plaintiff, as a black district manager.

25.    Plaintiff was held to an entirely different standard than Caucasian managers. Some examples include:

   a.    Plaintiff was hired at a lower salary than less qualified Caucasian district managers. For example, Plaintiff was paid $63,500 while other Caucasian district managers were started at ~ $70,000. As to one comparison, Joseph McGuire ("McGuire")(Caucasian) earned a higher salary than Plaintiff, was assigned less locations, and he performed subpar in contrast to Plaintiff. Yet, he was *one of many* paid higher than Plaintiff.

   b.    Plaintiff was assigned a low performing territory as a district manager, where Caucasian management similarly situated to Plaintiff were assigned much more favorable territories and less locations, generally at higher compensation.

   c.    While Plaintiff was assigned a territory that was very underperforming prior to his hire, he drastically and exponentially increased the performance of the territory. In fact, Plaintiff elevated the territory to a top-performing district often increasing sales by 10-20% per month. There was no basis to ever discipline Plaintiff or admonish Plaintiff for performance, yet Plaintiff was given admonishments or discipline for not meeting some <u>subjective</u> (and non-uniform) goal from Heffley that other non-black district managers were not evaluated under or being disciplined for within Defendant. After Plaintiff had escalated complaints (described further *herein*), Heffley had to stop using the absurd and knowingly disparate goals for Plaintiff, but his apparent warnings or discipline (entirely disparately issued to him) remained within his personnel file.

   d.    To meet expectations, Plaintiff was generally working 7 days per week and no less than 10 – 13 hours per day. Plaintiff was working literally around the clock during his entire tenure. Heffley was aware of this, and he was not as demanding from non-black similarly-situated management. It was an abusive workload and a level of expectation not similarly expected of non-black management.

    e.   After black (and minority) management was overly pressured, exploited, abused, and mistreated, they were replaced with Caucasian management.

26.    Plaintiff was informally complaining about discriminatory treatment in late 2025, as to being overworked and mistreated and would would tell Heffley certain comments he was making or letting other management make were inappropriate and offensive.

27.    Plaintiff was so distressed that nothing was changing and that people he worked around felt discriminated against that he escalated formal complaints as of early February 2026.

28.    Plaintiff complained of racism to corporate in the US, corporate in Canada, and told Heffley's boss, Manning, that he had been in touch with the EEOC and was going to pursue a racism case on behalf of himself and others because of Heffley.

29.    Plaintiff was very adamantly complaining of institutional racial discrimination during his last approximate 1-2 months of employment.

30.    Heffley had become so angry at Plaintiff as of early 2026 that he was ignoring him, not responding to him, and offensively ending Plaintiff's participation in meetings.  Heffley treated Plaintiff as if he could no longer stand him and would do anything to get rid of him.

31.    Plaintiff was then terminated on or about March 26, 2026, while Plaintiff's territory was one of Defendant's top-performing districts due to his efforts.

32.    Plaintiff was not given any meaningful rationale for his termination other than being told he was an at-will employee.

33.    No policy of Defendant requires an employee at any level to be offered severance compensation upon separation **if** he or she is terminated for performance or misconduct, yet

Plaintiff was offered a severance package on the condition that he waive all possible legal claims against Defendant, including as to discrimination and retaliation.[2]

34.    Therefore, Plaintiff avers that subject to a hostile work environment, discriminated against, disciplined and terminated because of his race and complaints of discrimination in violation of Title VII and 42 U.S.C. § 1981.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

35.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36.    Plaintiff believes and therefore avers that he was disciplined and terminated from Defendant because of his race and/or because he complained of racial discrimination to Defendant's management and HR department.

37.    Plaintiff was also subjected to a hostile work environment during his period of employment due to his race and/or complaints of racial discrimination through disparate treatment, pretextual admonishment, and demeaning and/or discriminatory treatment towards him.

38.    These actions as aforesaid constitute violations of Title VII.

**Count II**

---

[2] *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

## Violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981")
### ([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)

39.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.    Plaintiff believes and therefore avers that he was disciplined and terminated from Defendant because of his race and/or because he complained of racial discrimination to Defendant's management and HR department.

41.    Plaintiff was also subjected to a hostile work environment during his period of employment due to his race and/or complaints of racial discrimination through disparate treatment, pretextual admonishment, and demeaning and/or discriminatory treatment towards him.

42.    These actions as aforesaid constitute violations of Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be

appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    _____

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: July 30, 2026

9